IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Omar Guerra, a/k/a "Potato," | ) | |
| | ) | Cr. No. 3:07-600 |
| Movant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Movant Omar Guerra is a federal inmate who currently is housed at FCI-Memphis in Memphis, Tennessee. Movant brings this action pursuant to 28 U.S.C. § 2255.

## I. FACTS AND PROCEDURAL HISTORY

Movant Omar Guerra was indicted in a superseding indictment on June 21, 2007, and charged with conspiracy to possess with intent to distribute and to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 (Count Two). A second superseding indictment was filed on October 17, 2007 that charged Movant with conspiracy to possess with intent to distribute and to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 (Count Two); and possession with intent to distribute and distribution of 100 kilograms or more of marijuana and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2 (Counts Four through Twelve). On March 17, 2008, Respondent United States of America filed an Information notifying Movant that he was subject to increased penalties pursuant to 21 U.S.C. § 851 based upon a felony drug conviction in Kent County, Michigan, on January 4, 2000. ECF No. 170.

Movant pleaded guilty on May 29, 2008 to Count Two of the second superseding indictment.

At the guilty plea hearing, the court engaged in a colloquy with Movant pursuant to Fed. R. Crim.

P. 11:

> Q.    . . . All right, Mr. Guerra, are you satisfied with the manner in which your lawyer has represented you?
>
> A.    No, ma'am.
>
> Q.    All right.  What is the basis for your dissatisfaction?
>
> A.    With all due respect to South Carolina and yourself, ma'am, I am looking at the same 20 to life plea that I was first looking at before my cooperation.
>
> Q.    All right.  So, you are not satisfied with [trial counsel's] representation.  Is it – are you prepared to enter a plea today?
>
> A.    I am ready, yes, ma'am.  I am ready to plead.
>
> Q.    Are you dissatisfied with your agreement?
>
> A.    With my agreement. . . . There is, I have–there is nothing–there is no bargain, there is nothing, there is just 20 to life just like before I cooperated.
>
>        . . . .
>
> [By Assistant United States Attorney:] Your honor, it wouldn't matter who Mr. Guerra is represented by if he was represented by F. Lee Bailey or someone else they would not have been able to negotiate any better deal with this office.  We gave–he may not understand the way this office negotiates cases, he is facing a 20 year mandatory minimum because of his prior conviction.  It is in his interest instead of having an enhancement withdrawn to have the ability for a downward departure, and that is what [trial counsel] has negotiated for him because his guideline range most likely exceeds the mandatory minimum.
>
>        So, in the government's opinion, [trial counsel] has negotiated the absolute best agreement that he could negotiate for Mr. Guerra given all the facts of this case and given Mr. Guerra's prior criminal history. [A different Assistant United States Attorney] met with [trial counsel] and Mr. Guerra at length to go over these issues at [trial counsel's] request.  And while I understand that Mr. Guerra isn't happy about the fact that he faces a 20 year mandatory minimum, he has the ability to earn a reduction under the 20 year mandatory minimum if he provides substantial assistance.  I think his problem is we can't do anything about his prior conviction, no

can [trial counsel].

And so, while he may be dissatisfied with the agreement that the government would give him, he should not be dissatisfied with [trial counsel's] representations in that regard because I wouldn't give a better deal to any other lawyer under the facts of this case.

[By the court:] Mr. Guerra, at this point in time I am trying to find out whether you want to go forward with this hearing today or not. If you don't agree with it, you signed the plea agreement, I understand, but before I take a plea from you, I have to make sure that that is what you want to do. If you don't want to enter into that agreement, you don't have to, you can go to trial. Do you understand that?

A.     Yes, ma'am.

Q.     You have a right to go to trial.

A.     No, I don't want to go to trial.

Q.     All right. So, if you don't want to go to trial, the government has just indicated that this–that is the only agreement that they are going to agree to short of a trial. Do you want to go forward with today's hearing?

A.     Yes, ma'am.

Q.     Do you feel that you have talked with [trial counsel] for [as] often as for as long as you feel necessary so that you understand all of the terms and conditions?

A.     Yes, ma'am.

Q.     I want you to be honest with me because I really need to know this, I really need to know whether or not you want to do this and whether you understand what you are about to do. It is very important. So, if you have any hesitation whatsoever, you need to let me know at this time before it is too late, do you understand that?

A.     Yes, ma'am.

Q.     Do you need any more time to talk with your lawyer?

A.     Yes, ma'am.

3

Q.    You would like some more time?

A.    Please.

Q.    Would you like to talk with him now or do you want to continue your hearing to another day?  You can take time now and speak with him if you like.

A.    I just don't want to take it to trial.

Q.    Why don't you talk to [trial counsel] at this time.

        . . . .

Q.    Mr. Guerra, was your attorney able to answer your questions?

A.    Yes, ma'am.

Q.    Did you have enough time to talk with him?  I mean, if you needed more time, then I could just do yours separate and go forward with the [other defendants], but if you feel you have had enough time to talk with him, then we can go forward.  Do you feel you have had enough time?

[By trial counsel:] I think his only concern, . . . he wants it to at least be stated as long as he doesn't do anything adverse to what he has already done, the information he has already provided, the substantial assistance he has already given that he would be in line for a 35(b) motion.

        . . . .

[By the Assistant United States Attorney:] . . . I guess he wants to know at this point does the government believe that he will receive such a motion, does it view his assistance as coming close to substantial range?  So long as he doesn't do anything to mess it up by failing a polygraph, lie, et cetera, I think I can give him some assurance that it appears–it appears that unless he does something wrong, he will likely qualify for a Rule 35.

        . . . .

[By the court:] Does that answer your question, Mr. Guerra?

A.    Yes, ma'am.

ECF No. 314, 14-22.

4

The court subsequently informed Movant, among other things, that his sentence could be increased based on relevant conduct and that he was entitled to certain constitutional rights. The court read to Movant the language and elements of Count Two the second superseding indictment, and advised him of the penalties he faced, including a mandatory minimum term of imprisonment of twenty years and a maximum term of life imprisonment based upon a prior felony drug conviction. Movant acknowledged that he understood how relevant conduct might apply to his case for sentencing purposes. The court explained to Movant the charges against him, the elements the government would have to prove if he went to trial, and the possible penalties he faced. The Assistant United States Attorney summarized the plea agreements. Movant informed the court that no one had promised him what his sentence would be or threatened him or used force, pressure, or intimidation to cause him to plead guilty. The Assistant United States Attorney summarized the evidence. The Assistant United States Attorney placed on the record the fact that Movant had stipulated in the plea agreement that he has a prior felony drug conviction that subjected him to enhanced penalties, and that Movant had agreed not to contest the § 851 Information. In addition, the Assistant United States Attorney noted that Movant had agreed in the plea agreement to waive his right to direct appeal as well as all rights under 28 U.S.C. § 2255, except as to claims of prosecutorial misconduct or ineffective assistance of counsel. Movant indicated to the court that he understood the proceedings, he agreed with the government's summary of the evidence and the plea agreement, and that he wished to plead guilty. Accordingly, the court  accepted Movant's change of plea. See generally ECF No. 22-78; ECF Nos. 170 and 184.

On October 14, 2008, Movant filed a pro se motion to withdraw his plea, denying that he possessed a prior conviction that could increase his mandatory minimum sentence from 120 months

to 240 months incarceration and complaining that trial counsel had failed to challenge the § 851 Information. ECF No. 212. On May 4, 2009, Movant filed a second pro se motion to withdraw his plea of guilty, contending that trial counsel failed to adequately explain the plea agreement. ECF No. 231. Movant further asserted that he had been intimidated by an agent of the Federal Bureau of Investigations on April 28, 2008, when the agent purportedly told Movant, "If you do not sign this plea it's the worst mistake you've done in your life." ECF No. 231, 1. In addition, Movant contended that trial counsel improperly told him that he faced a maximum imprisonment term of life. Id. at 2.

The court held a hearing on Movant's motions on May 14, 2009, at which time he presented his arguments:

> THE COURT: All right. So, Mr. Guerra, are you saying that at your [plea] hearing you thought your range was going to be 10 years to life and now you find out that it is 20 years to life?
>
> THE DEFENDANT: Because of the 851.
>
> THE COURT: But at your plea, did I not read to you what the penalty was based on the fact that you had an 851 enhancement?
>
> THE DEFENDANT: I didn't understand, Your Honor.
>
> THE COURT: What do you mean you didn't understand? Did you tell me you didn't understand? I mean, I asked you if you needed an interpreter, I don't recall you asking for an interpreter, because we can make an interpreter available to you.
>
> And when I read to you the possible penalty that you faced, I said that if you had one prior felony drug conviction–do you understand what I mean by one prior drug conviction?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: The minimum term that you could be in prison was 20 years, that's the least. And I told you that and you understood that you had one prior felony drug

conviction, correct?  You know that, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay.  So I said if you have one prior felony drug conviction, the minimum term of imprisonment for you would be 20 years.  That's the least amount of time you could receive was 20 years.  The maximum would have been life; did you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: So what is it now that you don't understand?  That 20 years is as a result of your 851.  So, as it stands now, the minimum term of imprisonment that you can face is 20 years as a result of that 851, but you could receive up to life imprisonment, depending on other relevant conduct and other things that are considered by the probation office.

      . . . .

THE DEFENDANT: No ma'am, I have never–my lawyer has never explained anything to be prior to me signing the plea, Your Honor.  I agreed–I agreed to everything, Your Honor, you asked me because my lawyer told me, "Agree to everything."  That's what I was told, "Agree to everything and don't worry."

THE COURT: Now, are you telling me then that you lied to me in court when I asked you if anybody coerced you or if you were satisfied with your lawyer.  That's the time you are supposed to tell me under oath and you are not supposed to be dishonest to the court.

      Because the reason I asked you those questions is to prevent the kind of hearing that we are having today.  The reason I asked you those questions is so that I can make sure that your plea is made freely and voluntarily.

      So, when you tell me yes under oath, I take that as a yes, and I take it that you are telling me the truth.  Now, you are telling me that you weren't telling me the truth at that hearing?

THE DEFENDANT: Yes, ma'am. I was scared, Your Honor. All I heard was life, life, life, Your Honor.

THE COURT: What do you mean by all you heard was life. I told you 20 years to life.

7

THE DEFENDANT: Yes, you --

THE COURT: I said the minimum you could face is 20 years, the maximum was life. That would have been whether or not you had an 851 or not, because I think if you only had–if you did not have a prior drug conviction, it would have been 10 years–I think it would have been 10 years, if I'm correct, 10 years to life. So you still could have been facing life regardless, just the minimum would have been 10 years as opposed to 20 years.

THE DEFENDANT: Yes, ma'am.

THE COURT: And what is it that you did not understand, Mr. Guerra?

THE DEFENDANT: I didn't understand that one thing about stipulations, I did not understand–

THE COURT: What do you mean, "one thing about stipulations"? What are you talking about?

THE DEFENDANT: Everything that he stipulate in the plea agreement, Your Honor, I didn't understand what that meant, I didn't know what that–I didn't understand. Never was I–

THE COURT: Well, what did you think the prior meant? What did you think the effect of the prior was?

THE DEFENDANT: Well, I think, Your Honor, that basically my prior was not even a predicate, not a qualifying predicate, you know. So, I don't know how they were using it.  Now that I'm–that I came, you know–learned a little bit -- I don't know nothing, you know, Your Honor, but–

THE COURT: But you understand that as a result of your prior drug conviction, you were facing 20 years? You understood that, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay.

         . . . .

THE DEFENDANT: I got intimidated.

THE COURT: How?

THE DEFENDANT: By the FBI agent telling me that if I didn't sign my plea, Your Honor, in front of my lawyer, in front of my lawyer at the time, if I didn't sign that plea that it was the worst mistake of my life. Everything that–everything that–once I got my PSI [presentence investigation report], everything that is in that PSI, your Honor, it's all based on lies.

THE COURT: All right, everything in the PSI, you say, is based on lies. But you have an opportunity to object to those statements at the sentencing hearing.

ECF No. 332, 12-20.

Movant further complained that, after the change of plea hearing, the Assistant United States Attorney had identified Movant as a witness in another criminal trial without Movant's permission. The court determined that the issues raised by Movant needed to be addressed at a sentencing hearing. Therefore, the court denied Movant's motions to withdraw his plea of guilty. ECF No. 332, 35.

Movant filed a third pro se motion to withdraw his plea of guilty on June 22, 2009. Movant contended that trial counsel failed to go over the plea agreement and the effect of the stipulations contained in the agreement. Movant asserted that he was told that if he went to trial and was found guilty, he would be sentenced to life in prison. Movant reiterated his contentions that he was intimidated by an FBI agent to force him to sign the plea agreement, and that the Assistant United States Attorney used his name as a government witness without Movant's knowledge. Movant also denied that he had made a valid waiver in the plea agreement of his right to contest any conviction or sentence, either by direct appeal or other post-conviction action. ECF No. 236.

The United States Probation Office (USPO) submitted a PSI to the court in preparation for a sentencing proceeding. The USPO attributed 16,263.88 kilograms of marijuana to Movant, for a base offense level of 36. The base offense level was increased by two levels for obstruction based

9

on information that Movant had threatened Timothy Dickensheets, an inmate who had cooperated with the government with respect to Movant's drug activities.  The USPO further determined that Movant was not entitled to a reduction for acceptance of responsibility because Movant had not been truthful concerning relevant conduct.

Movant's prior convictions resulted in a subtotal criminal history score of 13.  Two levels were added because Movant was on state probation at the time the instant offense was committed.  Movant was assessed 15 criminal history points for a criminal history category of VI.  Movant's guidelines range was 360 months to life imprisonment.  Movant's statutory sentence with one prior felony drug conviction was a minimum of 240 months and a maximum sentence of life imprisonment.

Counsel filed the following substantive objections to the PSI:

1.    Defendant denies that in 2003, Timothy Dickensheets set up a deal for Guerra to distribute 18 ounces of methamphetamine to Greg Shrader. . . . (Objection No. One)

2.    Defendant denies that in November 2005, he came to Columbia, South Carolina, and delivered 600 pounds of marijuana to Rufus Hamilton's trailer. In fact, Defendant states that he does not know anyone named Rufus or Rufus Hamilton.  (Objection No. Two)

3.    Defendant denies that in 2005, he delivered 9 kilograms of cocaine to Rufus Hamilton at a warehouse on Bluff Road in Columbia, South Carolina.  As stated above, Defendant states that he does not know anyone named Rufus or Rufus Hamilton.  Defendant also denies he delivered 20 kilograms of cocaine to Dickensheets' storage building . . . or that he delivered an additional 42 kilograms of cocaine to Dickensheets that Dickensheets distributed to Rufus Hamilton.  (Objection No. Three)

4.    Defendant objects to the obstruction adjustment and denies that he ever approached Dickensheets and stated that he could get him anywhere and anytime he wants.  In fact, Defendant does not recall even being in the Oklahoma City facility at the same time as Dickensheets.  (Objection No.

Eight)

5.    Defendant objects to the probation officer's position that Defendant does not accept responsibility for his role in the conspiracy and, therefore, will not receive an adjustment for acceptance. Defendant gave a proffer to the government admitting his role and he also acknowledged his role to the probation officer, as noted in the report. . . . (Objection No. Nine)

See generally ECF No. 279-2, 1-4.

In addition, Movant interposed the following pro se objections:

1.    Defendant objects [to the § 851 enhancement] where defendant Omar Guerra was never informed by counsel about or meaning of § 851 enhanced penalty. (Objection Number One)

2.    Defendant Omar Guerra states that . . . [§ 851 enhancement] was never in the indictment. (Objection Number Two)

3.    Defendant Omar Guerra objects to [certain statements of Dickensheets regarding drug transactions with Greg Shrader as inconsistent with Dickensheets' trial testimony in another case] and also not relevant conduct to Defendant's instant offense [because] there is no mentioning of this incident within the indictment. (Objection Number Three)

4.    Defendant Omar Guerra states that [certain statements by Dickensheets are inconsistent with statements made by another cooperating witness, Michael Dale Rusk, regarding a delivery to Dickensheets in 2005;] also not relevant conduct to defendant instant offense. (Objections Number Four and Five)

5.    Defendant Omar Guerra states that . . . , based on the information provided by Dickensheets . . . , Guerra is accountable for 18 ounces of methamphetamine and 71 kilograms of cocaine for a total converted amount of 16, 263.88 kilograms of marijuana. Where defendant objects there is no mention of this incident within defendant indictment not relevant conduct to the instant offense. (Objection Number Six)

6.    Defendant Omar Guerra object to paragraph 32 of page 10 of any issues that are not relevant conduct to defendant's instant offense. (Objection Number Seven)

7.    Defendant objects and challenges under See: Apprendi v. New Jersey, but nothing prevents a defendant from waiving his 'Apprendi Rights.' When a

11

judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all facts which the law makes essential to the punishment. Defendant objects and challenges [paragraphs in the PSI as not constituting] relevant conduct to instant offense and challenges [the same] under Apprendi, Blakely & Booker.  (Objection Number Eight)

8.    Defendant Omar Guerra also objects and challenges the drug weight in Count Two of his indictment and drug weight in paragraph 17, 18, and 19 of page 7 and paragraph 31 of page 10 . . . , where drug weights are justifiably disputed, the government bears the burden of proving by a preponderance of the evidence the . . . drugs for which a defendant should be held accountable at sentencing. . . . Defendant's guilty plea to a conspiracy indictment alleging quantity, but not ascribing any specified quantity to the individual defendant, does not automatically render the defendant's guilty plea an admission of the quantity charged in the conspiracy count.  (Objection Number Nine)

9.    Defendant Omar Guerra should still be given the 3 points for accepting responsibility being that it is a part of his original plea agreement but because the defendant decided to challenge his drug weight, which under Apprendi v. New Jersey, he has a right to do. The government is withdrawing the 3 points for accepting responsibility, See Gilliam & Goff.  (Objection Number Ten)

10.   Defendant Omar Guerra makes the objection and challenges all issues that are not relevant conduct to defendant's instant offense under See: Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 124 S.Ct.2531 (2004), Booker v. United States (2005).  (Objection Number Eleven)

See generally id. at 6-12.

Additional objections filed by Movant read as follows:

1.    Defendant objects to paragraph 31 and 32 of page 10 of his PSI report. Where defendant only stipulated to relevant conduct to his instant offense as shown in his plea agreement. If any other factors are used to raise the ceiling of the defendant's sentence it opens the door for the defendant challenged through his sixth amendment, all in none relevant factors.  (Objection Number One)

2.    Defendant also objects and states that the predicate offense for the enhancement and pursuant to 21 U.S.C. § 851 . . .  is being used as a predicate to count for defendant base offense level cannot be used also to make his criminal history category level.  Defendant states this predicate

being used for enhancement purposes and criminal history category is not a serious drug offense and does not fit the criteria to be used to enhance defendant either. . . . Defendant states he is being [assessed points] for his criminal history [and the offense also is being] used for enhanced purposes pursuant to 21 U.S.C. § 851[,] which puts defendant at a 20 to life due to use of prior conviction being used as a predicate. Which clearly is double counting. (Objection Number Two)

3.  Defendant also objects to criminal history points added in paragraph 38 of page 11. Defendant states that paragraph 38 page 11 (Driving While Intoxicated) there was no lawyer present and defendant didn't sign a waiver therefore point should be removed. (Objection Number Three)

4.  Paragraph 39 of page 12 (Possession of Controlled Substance to wit Cocaine less than 1 gram Case No: CR-0120-96-A) that charge was dismissed see paragraph 50 of page 16. (Objection Number Four)

5.  Defendant objects to paragraph 35 of page 11 in paragraph 60 of page 16 where defendant states that the information is incorrect from PSI reporter, defendant and the within witness (Dickensheets) were never at the same institution at the same time as the records will show. Before the courts sentence defendant under the impression that we were, all effort should be made by the court to correct this incorrect information. Because it's giving the defendant (2) points on defendant's base offense level for an incident that never took place. And the points being used are actually raising the ceiling of the defendant's sentence. (Objection Number Five)

See generally id. at 12-14.

October 14, 2009, Movant appeared before the court for a sentencing proceeding. At the commencement of the proceeding, the government informed the court that Movant had ceased cooperating and had refused a polygraph examination. ECF No. 311, 20. As such, the government considered Movant to be in breach of the plea agreement and not entitled to a downward departure. ECF No. 311, 21.

The court also heard from Movant regarding his motion to withdraw his guilty plea. The court observed that, under Fed. R. Crim. P. 11(d)(2)(b), a defendant may withdraw a guilty plea prior

to sentencing if the defendant can show a fair and just reason exists to grant a defendant the opportunity to withdraw the plea. The court noted the factors set forth in United States v. Bowman, 348 F.3d 408, 413-14 (4th Cir. 2003), including that a thorough Rule 11 colloquy leaves a defendant with a limited basis to withdraw his plea. The court determined that, given the thoroughness of the Rule 11 colloquy, the evidence did not support a finding that Movant did not make a knowing and voluntary plea. The court thereupon denied Movant's June 22, 2009 pro se motion to withdraw his guilty plea. ECF No. 311, 21-23.

The government presented as witnesses Dickensheets,; Special Agent Rodney Crawford of the Federal Bureau of Investigations; Gregorio Garcia, a co-defendant; and Guadalupe Hernandez, a defendant in a related case. The court ruled on the various objections to the PSI and determined that Movant was subject to a statutory term of 20 years to life imprisonment. Regarding the Sentencing Guidelines, the court found that Movant possessed a total offense level of 38, a criminal history category of VI, and a guideline range of 360 months to life imprisonment. The court sentenced Movant to incarceration for a period of 360 months. Judgment was entered on October 20, 2009.

Movant filed a notice of appeal on October 20, 2009. Appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), in which he raised an issue as to whether the court erred in denying Movant's motions to withdraw his guilty plea. Movant also filed a pro se brief in which he asserted that his plea was not knowing and voluntary because he was coerced by a federal agent and that the government breached the plea agreement by failing to move for a downward departure based upon substantial assistance. See United States v. Guerra, 410 F. App'x 746, 748 (4th Cir. 2010). On November 10, 2010, the Court of Appeals for the Fourth Circuit determined that (1)

14

the government did not breach "either the spirit or the letter" of its bargain with Movant; (2) Movant failed to show by clear and convincing proof that his plea was induced by coercion or intimidation; (3) Movant failed to demonstrate ineffective assistance of counsel sufficient to warrant withdrawal of his guilty plea, and (4) the court did not abuse its discretion in denying Movant's motions to withdraw his guilty plea. The Fourth Circuit  affirmed Movant's conviction and dismissed the appeal of his sentence as being subject to a valid waiver. Id. at 748-49.

On November 7, 2011, Movant, proceeding pro se, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Movant asserts the following grounds for relief:

Ground One: The District Court erred in failing to permit Movant to withdraw his coerced guilty plea and his attorney was deficient for failing to properly raise the preserved claim on direct appeal.

Ground Two: Counsel was ineffective on appeal for failing to adequately challenge coerced plea.

Ground Three: Counsel was ineffective on appeal for failing to challenge preserved and erroneous obstruction enhancement under U.S.S.G. § 3C1.1.

Ground Four: Counsel was ineffective for failing to challenge the government's breach of the plea agreement at sentencing and on appeal.

Ground Five: Counsel was ineffective for failing to pursue promised Rule 35 motion for reduction of sentence based on substantial cooperation.

Ground Six: Counsel was ineffective for failing to properly argue in support of and appeal the denial of Movant's acceptance of responsibility points under U.S.S.G. § 3E1.1.

Ground Seven: Counsel was ineffective for filing an Anders brief on direct appeal instead of seeking merits review of claimed and preserved errors.

See generally ECF No. 418-1, 6-7.

This matter is before the court on motion for summary judgment filed by Respondent on

15

March 7, 2012.  By order also filed on March 7, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4ᵗʰ Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately.  Movant filed a response in opposition to Respondent's summary judgment motion on April 12, 2012.

## II.  DISCUSSION

Respondent has moved for summary judgment.  Pursuant to Fed. R. Civ. P. 56(a), the court shall grant summary judgment if Respondent shows that there is no genuine dispute as to any material fact and Respondent is entitled to judgment as a matter of law.  The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial.  Id.

### Law/Analysis

As an initial matter, the court notes that, to the extent Movant's Ground One could have been raised on direct appeal, this claim is procedurally defaulted.  Generally, when a movant attacks his sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack.  See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing

16

United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir.1994)). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. Id. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. Id. Movant has made no such showing. Accordingly, the court turns to Movant's claims of ineffective assistance of counsel.

To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

A.    Coerced Guilty Plea - Grounds One and Two

Movant contends that appellate counsel was ineffective for failing to challenge the court's denial of Movant's pro se motions to withdraw his guilty plea. However, as noted hereinabove,

appellate counsel did raise the court's denial of Movant's motions on appeal, and the Fourth Circuit concluded that the court did not abuse its discretion by denying Movant's motions to withdraw his plea. According to Movant, however, appellate counsel did not adequately address the issue in his Anders brief. The court must apply a "highly deferential" standard in scrutinizing appellate counsel's performance, see Strickland, 466 U.S. at 689, and the court concludes that appellate counsel's performance fell well within an objective standard of reasonableness.

As to Movant's contention that appellate counsel was ineffective for failing to raise Movant's claims that his guilty plea was coerced, the court notes that Movant submitted a pro se brief to the Fourth Circuit in which he asserted his grounds for relief. His arguments were addressed and rejected by the Fourth Circuit. Assuming for purposes of summary judgment only that appellate counsel was deficient for failing to assert that Movant's guilty plea was not knowing and voluntary, Movant cannot show prejudice. Movant's Grounds One and Two are without merit.

B.    Application of Obstruction Enhancement - Ground Three

Movant contends that appellate counsel was ineffective for failing to challenge the court's determination that Movant should be assessed two points for obstruction of justice based on his alleged threat to Dickensheets.

At the sentencing hearing on October 14, 2009, Dickensheets testified regarding his encounter with Movant:

Q.    Okay. Since you have been arrested and been in custody have you had any contact with Mr. Guerra in the Bureau of Prisons?

A.    Yes, sir.

Q.    When and where did you have contact with Mr. Guerra in the Bureau of Prisons?

18

A.      Sometime in August, July/August of 2007.

Q.      Okay. Tell the court about that incident.

A.      I was being transferred to, I guess, my federal prison from Lexington and in
        the process we had a layover in Oklahoma.  It's, I guess, a hold-over center
        for the BOP. And while I was in the block I was on the phone talking to my
        family and I happened to notice Guerra coming into the block.  He stopped,
        looked at me. I got nervous, got off the phone.  He made a comment to me
        and I went straight to the officer.

Q.      All right. What was the comment he made to you?

A.      "I can get you -- or I'm going to get you. I can get you anywhere or anywhere
        any time."

Q.      Okay. How did you perceive that comment?

A.      Life threatening.

Q.      Okay. Why did you perceive it as life threatening?

A.      I mean, just knowing -- knowing the past and what type of people I was
        dealing with.

Q.      Okay. Had you had any -- had you been around Mr. Guerra at any time in
        your past during your drug dealing activities with him that caused you to
        believe that he was capable of carrying out that threat?

A.      Yes.

Q.      And what were those incidents?

A.      One instance was "TC's" -- a family member of "TC", a fellow out of Atlanta
        --

Q.      That was your supplier of marijuana initially, correct?

A.      Yes, in '03.

        . . . .

19

A.    One of "TC's" workers was messing with "TC's" daughter, which was underage.

Q.    Okay.

      . . . .

A.    "TC" proceeded to have that individual that was messing with his daughter, with "TC's" daughter, sent back to Mission, Texas.

Q.    Okay.

A.    And Mr. Guerra said that he would handle that situation for "TC", no life -- no killing, but, you know, he shot him twice, once in each leg.

      . . . .

Q.    And how did you become aware of that?

A.    Mr. Guerra told me that.

Q.    Okay. Any other instances that occurred or anything else that Mr. Guerra had told you about when y'all were dealing drugs that would make you think that he was capable of carrying out that threat?

      . . . .

A.    Near the end of -- well, sometime in '04 -- I mean, '05 Mr. Guerra and two individuals came to South Carolina to pick up some money, you know, because things were going bad and the discussion came up of Jebediah Nelson and him owing some money and Mr. Guerra wanted me to point out, show him where he lived so they could -- the two individuals or one of the individuals could kill.

Q.    Okay. And Jebediah Nelson, how was he related to your drug dealing?

A.    He's a co-defendant and sold drugs with me.

      . . . .

Q.    . . . after -- after Mr. Guerra made that comment to you in the BOP who did you notify?

20

A.     The CO on duty in the cell block.

Q.     Did you notify anyone else, any other law --

A.     Yes.  I called [Special Agent] Ronnie Crawford [of the FBI] and I called my family too.

Q.     Okay. Mr. Dickensheets, when you saw Mr. Guerra in the BOP, you had already provided information pursuant to your plea agreement to Special Agent Crawford and the FBI about your involvement with Mr. Guerra; is that correct?

A.     Yes, sir.

Q.     And you had already -- you had already testified in one trial; is that correct?

A. Yes, sir.

Q.     And at that time Mr. Guerra, as far as you know, was in custody based somewhat in part on the information that you had provided. Is that correct?

A.     I felt he was solely there because of the testimony that I provided.

ECF No. 311, 43-47.

Special Agent Crawford corroborated Dickensheets' testimony by affirming that Dickensheets reported the incident to him and that Dickensheets "was terrified.  He was almost certain he was going to be killed in prison."  Id. at 88.

In support of his contention that appellate counsel was deficient for failing to raise a challenge to the obstruction enhancement, Movant has submitted a letter dated October 29, 2009, approximately two weeks after the sentencing hearing.  The letter purports to be signed by Dickensheets.  In the letter, Dickensheets states that he "could have been mistaken concerning the threat on my life."  ECF No. 418-2, 19.  Dickensheets further states that he "might be mistaken to his actual words spoken because I was and still am under a lot of stress and pressure that this case has put me through."  Id.  According to Movant, appellant counsel was aware of the October 29,

2009 letter, yet failed to use it to as a basis for appealing the obstruction enhancement.

Typically, recantation of testimony given at a trial is "'looked upon with the utmost suspicion.'" United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir. 1973) (quoting United States v. Lewis, 338 F.2d 137, 139 (6th Cir. 1964)). Where the circumstances surrounding the recantation suggest it is the result of coercion, bribery, or misdealing, a court is justified in disregarding it. Id. (citing United States v. Aviles, 197 F. Supp. 536 (S.D.N.Y. 1961)). In this case, Dickensheets informed a number of others regarding the perceived threat at the time it occurred in 2007. Two years later, Dickensheets credibly testified under oath as to the circumstances surrounding his confrontation with Movant. In the court's view, the circumstances surrounding the timing and contents of the October 29, 2009 letter suggest "coercion, bribery, or misleading" such that the Fourth Circuit would disregard it.

Appellate counsel did not render ineffective assistance for failing to raise a meritless issue. See United States v. Anthony, 149 F. App'x 135, 136 (4th Cir. 2005). Movant's Ground Three is without merit.

C.    Loss of Reduction for Substantial Assistance - Grounds Four and Five

Movant asserts that trial and appellate counsel were ineffective for failing to challenge the government's determination that Movant was not entitled to a reduction based upon Movant's cooperation. Movant notes that the plea agreement contains an agreement by the government to move for a reduction of sentence pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35(b). Movant also notes that the Assistant United States Attorney informed the court at Movant's change of plea hearing that Movant would be entitled to a reduction based upon substantial assistance.

The plea agreement provides that the government would agree to move for a downward departure "[p]rovided the Defendant continues to cooperate pursuant to the provisions of this Plea Agreement[.]" ECF No. 193, 8.  Defendant agreed in the plea agreement "to submit to such polygraph examinations as may be requested by the Government[.]" Id. at 7.  Defendant further agreed "that his refusal to take . . . any such polygraph examination to the Government's satisfaction will result, at the Government's sole discretion, in the obligations of the Government within the Agreement becoming null and void." Id.  Finally, as noted hereinabove, the Assistant United States Attorney conditioned his statement that Movant would be entitled to a sentence reduction on Movant's not "do[ing] anything to mess it up by failing a polygraph, lie, et cetera[.]" ECF No. 314, 20.

There is no dispute that Movant refused to undergo a polygraph examination.  Under the terms of the plea agreement, Movant's refusal constituted grounds releasing the government from its obligation under the plea agreement to move for a downward departure.  Neither trial counsel nor appellate counsel rendered ineffective assistance for failing to raise a meritless issue.  Movant's Grounds Three and Four are without merit.

D.    Loss of Acceptance of Responsibility Reduction - Ground Six

Movant next asserts that trial counsel and appellate counsel were ineffective for not adequately challenging the USPO'S determination that Movant was not entitled to a reduction in his offense level under U.S.S.G. § 3E1.1, which provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon

23

motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Application Note 1 to § 3E1.1 instructs, in pertinent part:

1.      In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

Movant's position appears to be that he should be held accountable only for the drug amounts to which he pleaded guilty.  However, pursuant to U.S.S.G. § 1B1.3, a defendant can be attributed drug amounts based on relevant conduct, i.e.:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A)

and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

Trial counsel vigorously argued in favor of reducing Movant's offense level based on acceptance of responsibility. Trial counsel noted that the USPO denied the reduction because Movant made objections about the weight of the drugs that he was involved in. ECF No. 311, 11. Trial counsel noted that Movant signed a plea agreement, gave a proffer, and admitted his guilt to the conspiracy charged in the indictment. Id. at 148-49. The court concludes that trial counsel's performance fell well within an objective standard of reasonableness.

As noted above, the court explained relevant conduct to Movant at the guilty plea hearing and obtained Movant's statement that he had talked with trial counsel about relevant conduct and how it might affect his sentence. Nevertheless, Movant frivolously contested corroborated drug transactions that were not specified in the indictment. The court finds that appellate counsel did not render ineffective assistance for failing to raise a meritless issue. Movant's Ground Six is without merit.

E.    Filing of Anders Brief - Ground Seven

Movant asserts that appellate counsel's performance was deficient because he filed only an Anders brief. Movant has identified no meritorious issues that should have been raised to the Fourth Circuit by appellate counsel. The court concludes that appellate counsel's performance fell well within an objective standard of reasonableness. Movant's Ground Seven is without merit.

### III. CONCLUSION

For the reasons stated, Respondent's motion for summary judgment (ECF No. 436) is **granted**. Movant's § 2255 motion (ECF No. 418) is **denied and dismissed**, with prejudice.

### IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Movant has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

February 25, 2014.

**NOTICE OF RIGHT TO APPEAL**

**Movant is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**